IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, et al., | ) ) ) | Case No. 1:99-CV-01152 |
| Plaintiffs, | ) ) | Judge Ann Aldrich |
| v. | ) ) | Magistrate Judge David S. Perelman |
| RODNEY SLATER, Secretary, Department of Transportation, et al., | ) ) ) | MEMORANDUM AND ORDER |
| Defendants. | ) ) | |

Before the court are cross-motions for summary judgment by the plaintiffs [Docket No. 101] and the defendants [Docket No. 98]. For the following reasons, plaintiffs' motion for summary judgment is denied, defendants' motion for summary judgment is granted in part and denied in part, and the matter is remanded back to the Federal Aviation Administration (the "FAA") for a new A-76 analysis of the privatization program.

**I.     Background**

This case concerns the privatization of certain air traffic control ("ATC") towers by the FAA and the challenge to that program raised by the National Air Traffic Controllers Association ("NATCA"), the union representing air traffic controllers employed by the FAA. The FAA began the privatization program in 1993, and NATCA first brought suit to challenge that program in 1994. The court, in that earlier case, held that the FAA had failed to make a proper determination regarding the character of ATC work, as required by OMB Circular A-76, and remanded the case back to the FAA, ordering it to halt the privatization program until such a determination had been made.

NATCA filed suit again in 1999, following the FAA's January 1999 determination concerning

-1-

visual flight rules ("VFR") air traffic control work. The court held in 2000 that the FAA's determination was insufficient under Circular A-76 and remanded the case back to the FAA for a second time, for a determination of the character of the air traffic control work being performed at the towers scheduled for privatization. The Sixth Circuit affirmed the court's ruling, and the FAA has since produced two determinations concerning the character of the air traffic control work performed at the towers scheduled for privatization. The first determination, made by Bill Peacock, the Director of Air Traffic Service, in July 2002 (the "Peacock Determination"), held that the ATC work at the 217 VFR towers within the federal privatization program was not "inherently governmental" and could thus be contracted out under Circular A-76. The second determination, made by then-Secretary of Transportation Norman Mineta in December 2002 (the "Mineta Determination"), held that all ATC work in the United States was not "inherently governmental" and could thus be contracted out under Circular A-76.

Shortly after the Mineta Determination, the FAA filed a motion for summary judgment, and NATCA cross-moved for summary judgment. In an order dated February 4, 2005, the court granted the FAA's motion in part, holding that Congress' amendment to the federal statutes governing airport facilities indicated Congress' clear view that air traffic control at Level I or VFR towers is not an "inherently governmental" function and could be contracted out. The court requested briefs from the parties concerning the FAA's adherence (or lack thereof) to Circular A-76's cost comparison requirements prior to privatization of work previously performed by government employees.

NATCA and the FAA have now moved for summary judgment again. The FAA argues that NATCA and the other plaintiffs lack standing to challenge the privatization program with regard to the cost comparison required by Circular A-76. NATCA argues that the FAA has failed to perform the "national security" analysis or the cost comparison analysis required by Circular A-76, and that the

-2-

FAA's program concerns more than just the Level I ATC towers described in the court's February 4, 2005 order, and that the FAA's determination with regard to the character of the ATC work at those towers is insufficient.

**II.     Discussion**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e):

> An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position. *See Celotex,* 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, this Court must view the evidence in a light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248. An issue is "genuine" if the evidence is such that a reasonable juror "could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether

the evidence is "so one-sided that [the moving party] must prevail as a matter of law." *Id.* at 252. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In this case, the court reviews the ATC privatization program under the "arbitrary and capricious" standard. *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983). Under that standard, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* at 43 (quoting *Burlington Truck Lines v. U.S.*, 371 U.S. 156, 168 (1962)). More specifically, the FAA must develop an "evidentiary basis for its findings." *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 476 (6th Cir. 2004).

After the court's order of February 2005 [Docket No. 93], there remain three NATCA challenges to the ATC privatization program. The national security argument raised by NATCA has as little merit as it did when the court rejected that argument in April 2000; more specifically, NATCA has produced no evidence creating any issue of material fact on that issue. Thus, that claim cannot support NATCA's claim for relief. Similarly, NATCA's cost comparison argument also fails. As the FAA points out, the Sixth Circuit has made it clear that plaintiffs in NATCA's position lack the prudential standing to challenge privatization programs on the basis of a failure to perform a cost comparison study. *Courtney v. Smith*, 297 F.3d 455 (6th Cir. 2002). Despite NATCA's protestations to the contrary, the Sixth Circuit had not granted NATCA standing on this issue, and after *Courtney*, this court may not do so either. As NATCA lacks standing to raise the cost comparison argument, that claim also cannot support NATCA's

prayer for relief.

The only remaining argument raised by NATCA is its charge that the FAA has failed to meet the requirements of Circular A-76 and associated statutes regarding the character of ATC work in the towers in the privatization program. In its February 2005 order, this court held that all Level I ATC towers were, as a matter of law, not "inherently governmental" and could therefore be lawfully privatized. At that time, the court did not determine whether any towers scheduled for privatization were non-Level I towers. Nor at this point is the court clear on which towers currently privatized and which towers scheduled to be privatized are still Level I towers, were Level I towers, or when any towers changed from Level I status. As the FAA has already made clear, the Level I through Level V classification system is no longer in use, having been replaced by a more complex classification system.

However, the question of whether any non-Level I towers are currently privatized or are scheduled to be privatized would be rendered immaterial if the court finds that either the Peacock Determination or the Mineta Determination satisfies Circular A-76 regarding determination of "inherently governmental" functions.

Regarding the latter, the court finds that the Mineta Determination, which purports to hold that *all* ATC work in the United States, including that performed at the nation's busiest international airports, is not "inherently governmental." The court is confused as to why such a "determination" was made, given that this case involves only a small subset of all ATC towers in the United States. The "relevant data" that must be examined for such a determination is not referenced in the Mineta Determination, nor has such data been presented to the court. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (citation omitted). Put simply, the Mineta Determination does not articulate a remotely satisfactory explanation for its exceedingly broad pronouncement regarding ATC work in the United States, nor does it set out a

rational connection between the "facts found" and the "choice made" - in this case, the choice to privatize a small subset of all ATC towers in the United States. *Id.* Therefore, the court finds the Mineta Determination, which uses much of the same language as the Peacock Determination, while citing no sources or specialized expertise on the part of its declarant, does not satisfy Circular A-76 and therefore provides no support for the FAA's privatization program.

As for the Peacock Determination, the court notes Director Peacock's experience and expertise in the field, but must also note the lack of citation to data, evidence, or anything other than assertions by Mr. Peacock concerning the state and history of ATC work in the United States. While the Peacock Determination purports to cover all towers in the privatization program, were the court to find the Peacock Determination sufficient to satisfy the FAA's obligation under Circular A-76, the court would be acting as little more than a rubber stamp for the FAA's decision, where the court had *twice* previously ordered the FAA to conduct a proper study, with sufficient evidentiary support, to meet Circular A-76's requirements. Thus, the court finds that the Peacock Determination does not satisfy Circular A-76 and therefore provides no support for the privatization program.

As the court has noted previously, even though the FAA has failed, again, to satisfy Circular A-76 in determining the character of the ATC work performed at the towers in the program, it is not the place of the court to make that determination in the first instance. Therefore, the court must deny NATCA's motion for summary judgment [Docket No. 101]. The court must also grant in part and deny in part defendants' motion for summary judgment [Docket No. 98]. NATCA's national security and cost comparison study claims are dismissed, but the court will deny summary judgment to the defendants at this time on NATCA's "inherently governmental" claim. As it appears from evidence produced by NATCA, some towers scheduled for privatization in the program are no longer Level I

-6-

towers, and other towers currently privatized may not have been Level I towers at the time of their privatization. That being the case, the court has no choice but to remand the matter back to the FAA for a determination pursuant to Circular A-76 regarding the character of the ATC work performed at all towers in the privatization program that either (1) were not Level I at the time they were privatized or (2) would not be Level I now and are scheduled for privatization under the program.

### III.     Conclusion

For the foregoing reasons, the plaintiffs' motion for summary judgment [Docket No. 101] is denied and defendants' motion for summary judgment [Docket No. 98] is granted in part and denied in part. The matter is remanded to the FAA under procedures similar to the two previous remands: (1) the FAA is ordered to complete an entirely new A-76 analysis regarding the "inherently governmental" nature of ATC work at towers in the program that were not Level I at the time of their privatization or are not Level I currently and have yet to be privatized; (2) while engaging in this analysis, the FAA shall not engage in further implementation of the privatization program; (3) the FAA need not resume control of already privatized towers pending the new A-76 analysis; (4) the FAA shall resume control of those towers if the FAA determines that those towers should not have been privatized in the first instance or

if the FAA fails to complete an A-76 analysis; and (5) if the FAA properly completes the A-76

analysis and determines that privatization is proper, they may resume implementation of the privatization program thirty days after disclosing their A-76 findings to NATCA.

This order is final and appealable.

IT IS SO ORDERED.

                                                  /s/Ann Aldrich
                                                ANN ALDRICH
                                                UNITED STATES DISTRICT JUDGE

**Dated: February 23, 2006**