UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, et al., | Case No. 1:99-CV-1152 |
| Plaintiffs, | |
| | JUDGE ANN ALDRICH |
| v. | |
| RAY LAHOOD, Secretary, U.S. Detpt. Of Transportation, et al., | MEMORANDUM AND ORDER |
| Defendants. | |

Before the court are (1) plaintiffs' motion for partial summary judgment and injunctive relief,[1] and (2) defendants' motion to dismiss or, in the alternative, for summary judgment.[2] For the following reasons, the court grants defendants' motion to dismiss, thus closing this longstanding litigation over the privatization of certain air traffic control towers.

**I.  BACKGROUND**

After more than a decade of litigation,[3] the long history of this case has been well told by the parties, this court, and the Court of Appeals. The plaintiffs (collectively "NATCA") brought this action in 1999 to challenge the FAA's decision to privatize certain air traffic control (ATC) towers.

---

[1] Plaintiffs' motion for partial summary judgment and injunctive relief [dkt. 151], response [dkt. 152], and reply [dkt. 154] is supplemented by plaintiffs' supplemental memorandum [dkt. 164], response [dkt. 167] and reply [dkt. 168].

[2] Defendants' motion to dismiss, or in the alternative, for summary judgment [dkt. 167], response [dkt. 168] and reply [dkt. 169].

[3] A related case, filed in 1994 concerning the same legal issues, preceded this case. *See NATCA, et al., v. Pena*, 1:09-cv-0574, 944 F. Supp. 1337 (N.D. Ohio 1996).

The most recent history of this case begins with this court's February 23, 2006 order remanding the matter to the FAA "for a determination pursuant to Circular A-76 regarding the character of the ATC work performed at all towers in the privatization program that either (1) were not Level I at the time they were privatized or (2) would not be Level I now and are scheduled for privatization under the program." [Dkt. 118, at 7].

The plaintiffs appealed the order, along with a February 2005 order [dkt. 93], on numerous grounds. However, the Court of Appeals did not reach the merits of the appeal, as it lacked appellate jurisdiction because this court's February 2006 remand order was not a final judgment. *National Air Traffic Controllers Ass'n v. Secretary of Dept. Of Trans.*, No. 06-3466, slip op. 2007 WL 2141941 (6th Cir. July 26, 2007) (per curiam) ("A federal court of appeals has jurisdiction from 'all *final decisions* of district courts'" citing 28 U.S.C. § 1291 (emphasis original)).

Then, in August 2008, this court re-opened the case to determine whether the parties were in compliance with the court's February 2006 order [dkt. 129] and allowed additional discovery [dkt. 131]. In September 2009 the court held a hearing on plaintiffs' motions for leave to file a second supplemental complaint [dkt. 132], to compel discovery [dkt. 146], and for partial summary judgment and injunctive relief [dkt. 151]. The court granted plaintiffs' motion to file a second supplemental complaint and to compel discovery, but stayed the motion for partial summary judgment and injunctive relief to allow additional briefing in light of the second supplemental complaint [dkt. 158]. The defendants have also filed a motion to dismiss or, in the alternative, for summary judgment [dkt. 167].

**II.     The Remaining Issue**

The heart of this case concerns the meaning and requirements of the Office of Management and Budget (OMB) Circular A-76. Initially issued in 1983, Circular A-76 establishes the federal policy for

contracting out commercial government services to the private sector. Circular A-76 requires the government to first "identify all activities performed by government personnel as either commercial or inherently governmental." Circular A-76 § 4(a). Only activities deemed "commercial" can be privatized. *Id*. at § 4. In 2005, this court held that "Level I ATC is *not* an inherently governmental function," citing Congress' amendment to 49 U.S.C. § 47124(b)(2). [Dkt. 93 (emphasis original)]. Thus, the FAA was permitted to privatize Level I ATC towers, provided it followed the procedures set forth in Circular A-76.[4]

Here, the plaintiffs have continuously argued that the FAA did not follow the requirements of Circular A-76 when privatizing certain low-density, or "Level I", air traffic control towers, or that it converted ATC towers that were not Level I. Indeed, on multiple occasions this court and the Court of Appeals have expressed frustration with the FAA and ordered it to perform a proper Circular A-76 analysis on the towers then-scheduled for privatization.[5]

In February 2006, this court ordered the FAA to make "a determination pursuant to A-76 regarding the character of the ATC work performed at all towers in the privatization program that either (1) were not Level I at the time they were privatized or (2) would not be Level I now and are scheduled for privatization." [Dkt. 118].

The FAA maintains that "there are no towers that were above Level I when converted, nor are there any towers scheduled to be converted. Accordingly, there is no further A-76 analysis that is

---

[4] Prior to 1998 the FAA classified ATC towers into Levels I through V, based upon the density of aircraft operations at the facility. Level I towers corresponded with an average density factor of fewer than 35 operations per hour. [Dkt. 83-3]. Because that classification system is no longer in use, the court will use the term "at or above 35 atd" ("air traffic density") to refer to ACT towers that were deemed Level II or higher prior to 1998. [Dkt. 167-1, at 6 n. 1].

[5] *See*, *e.g.*, *National Air Traffic Controllers Ass'n v. Secretary of Dept. Of Trans.*, No. 06-3466, slip op. 2007 WL 2141941 (6th Cir. July 26, 2007).

required." [Dkt. 133]. NATCA states that "it is fair to say" that the discovery provided on October 8, 2009 by the FAA "indicated that the FAA has not in the past privatized towers that were not Level I at the time they were privatized." [Dkt. 164, at 1 n.1]. Thus, only the second part of the court's February 2006 remand order - whether there are towers in the privatization program that would not be Level I now and are scheduled for privatization - is at issue. The court's February 2006 order concerns ATC towers that would have exceeded Level I densities *at the time* they were scheduled for privatization.

The sole count of NATCA's second supplemental complaint alleges that the privatization of air traffic control services "which attained Level II air traffic density *during the period of operation* is in violation of the Circular and Supplement, existing Agency policy and applicable law." [Dkt. 132-2, at 18 (emphasis added)]. Similarly, NATCA's supplemental memorandum in support of its motion for partial summary judgment and injunctive relief seeks summary judgment on "the FAA's failure to comply with OMB Circular A-76" and the court's February 2006 order "directing the FAA to 'complete an entirely new A-76 analysis' with respect to facilities that 'would not be Level I now and are scheduled for privatization.'" [Dkt. 164, at 2]. Because no current government operated ATC towers are scheduled to be privatized, the only claim left concerns the ATC towers that, having been lawfully privatized, have since exceeded 35 atd and are scheduled to have new contracts awarded during the week of December 14, 2009.

The FAA argues that Circular A-76 only applies to transfers from government to private operation and does not apply to the renewal or re-contracting of towers that are already privatized. In other words, NATCA's motion must fail, the FAA argues, because "it erroneously equates the privatization of an air traffic control tower with the re-competing of contracts to continue the commercial operation of air traffic control towers that were privatized over a decade ago." [Dkt. 152,

-4-

at 1]. The language of Circular A-76 seems to support this position. Section 5(d) of Circular A-76 states, in relevant part: "A streamlined or standard competition is not required for private sector performance of a new requirement, private sector performance of a segregable expansion to an existing commercial activity performed by government personnel, or *continued private sector performance of a commercial activity*." OMB Circular A-76 § 5(d) (emphasis added).

NATCA argues that "the FAA's current position appears to be that once a facility is 'privatized,' the applicability of OMB Circular A-76 is never revisited, even if the Circular was not complied with in the first instance, even if the nature of the activity that is the subject of the contract changes, and/or even if the contract has expired." [Dkt. 151, at 8].

However, the court cannot resolve this issue on the merits because NATCA's sole remaining claim exceeds its Article III standing as no individual plaintiff or NATCA could conceivably be injured by the re-competing of contracts for towers already converted to private operation.

### III. Law and Analysis

The jurisdiction of federal courts is limited by Article III of the Constitution to "Cases" and "Controversies." Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In order to establish standing, the plaintiff must satisfy three minimal Constitutional requirements: (1) that he or she has suffered a concrete and particularized "injury in fact" which is actual or imminent and not merely "conjectural" or "hypothetical;" (2) that there is a causal connection between the injury and the conduct complained of; and (3) that it is likely, and not merely speculative, that the injury will be redressed by a favorable decision. *Id*. An association of individuals suing on behalf of its members must meet additional requirements in order to establish its standing. The NATCA must show that: (1) its members would

otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit. *NATCA, et al., v. Pena,* 944 F. Supp. 1337, 1346 (N.D. Ohio 1996). A party who has standing to advance one claim does not necessarily have standing to advance another related claim.

In the previous related case, this court held that the "air traffic controllers' loss of their Level I government jobs is sufficient to constitute injury within the meaning of Article III" and that the loss of those jobs was "actual or imminent." *NATCA*, 944 F. Supp. at 1343-44 (N.D. Ohio 1996). Similarly, the Court of Appeals found prudential standing (but did not address constitutional standing) for the plaintiffs because their "interests is just not in keeping their jobs but extends to ensuring that the FAA does not privatize inherently governmental functions." *NATCA et al. v. Pena*, No. 95-3016, 78 F.3d 585 (Table), 1996 WL 102421, at *4 (6th Cir. Mar. 7, 1996).

Here, the FAA challenges the constitutional and prudential standing of all plaintiffs, asserting that no plaintiff has or will suffer any injury traceable to their remaining claim. [Dkt. 167, at 6]. Because plaintiffs remaining claim concerns the re-competing of contracts for towers that have been lawfully privatized, but have since attained 35 atd, no plaintiff, either individually or as a member of NATCA, can demonstrate any injury in the re-competing of those contracts. No individual plaintiff, nor any member of NATCA, would be injured as they plaintiffs are not currently employed at the towers at issue so there is no potential for loss of employment or any other injury. Taking the analysis one step further, even if the court were to enjoin the re-competing of contracts for towers that have since attained 35 atd, or even if the towers were converted back to government operation, no plaintiff can claim that they would receive employment as a result. Thus, there is no likelihood that any "favorable" decision

from this court could provide redress for any plaintiff.

Moreover, the three individual plaintiffs - David Clinkscale,[6] Margaret Grahm,[7] and David Khanoyan[8] - were employed at Level I towers that have never attained 35 atd, even by the plaintiffs own calculations.[9] Two of these plaintiffs have since retired. Thus, the individual plaintiffs are far removed from any conceivable injury in fact.

---

[6] David Clinkscale changed duties station on August 3, 1997 from Cleveland Lakefront Air Traffic Control Tower to the Air Route Traffic Control Center in Cleveland, Ohio, where he received a promotion with the change in duty station. [Dkt. 167-2].

[7] Margaret Grahm retied on May 24, 1997 from Cleveland Lakefront Air Traffic Control Tower. [Dkt. 167-2].

[8] David Khanoyan's duty station was changed on July 9, 1995 from Worcester, Massachusetts Air Traffic Control Tower to the Bradley-Windsor Locks Air Traffic Control Tower in Connecticut. He retired on October 3, 2005. [Dkt. 167-2].

[9] Plaintiffs allege that at least nine facilities have since attained Level II equivialant status since their conversion:
> (a) at least two (2) facilities have operated at the equivalent of Level II criteria (air traffic density factor at or above 35), during every fiscal year since they were privatized: San Carlos (SQL), which was privatized in 1996, and Melbourne (MLB), which was privatized in 1999 (Exhibit 2, Hagen Dec., ¶ 7, Ex. B. (FAA's air traffic density calculations), and Ex. D (Plaintiffs' additional air traffic density calculations));
> (b) at least three (3) facilities have operated at Level II for the past two or more years, including Stinson (SSF), which was Level II during fiscal years 2007 and 2008; Goodyear (GYR), which was Level II during fiscal years 2006, 2007, and 2008; and Hollywood (HWO), which was Level II during fiscal years 2005, 2006, 2007, and 2008 (Exhibit 2, Hagen Dec., Exs. B and D);
> (c) at least one facility, Carbondale (MDH), operated at Level II in fiscal year 2008, operated at Level I during fiscal year 2007, and was at Level II criteria for fiscal years 1999, 2000, 2001, 2002, 2003, 2004, 2005, and 2006 (Exhibit 2, Hagen Dec., Exs. B and D);
> (d): At least three additional facilities operated at Level II criteria during fiscal year 2008, including Bethel (BET), Renton (RNT), and Pompano (PMP) (Exhibit 2, Hagen Dec., Exs. B and D).

[Dkt. 151-2, at 5].
The FAA disputes these calculations [see dkt. 152, at 5], but concedes that three of those facilities - GYR, HWO, and SSF - have exceeded 35 atd as of August 31, 2009 [dkt. 167-6]. The FAA asserts that the remaining six facilities are no longer at or above 35 atd [dkt. 167-1, at 9]. However, the court need not resolve this dispute because it is not essential for this court's standing analysis.

NATCA did not directly respond to the FAA's challenge to their standing or proffer any ground for this court to find standing in its new and sole remaining claim. Rather, the NATCA simply cited the Court of Appeals and this court's prior finding of standing to pursue related claims and asserted that the "Court should reject the FAA's attempt to re-litigate the issue of Plaintiffs' standing in this case." [Dkt. 168, at 5].

The Court of Appeals and this court's prior findings of standing are not applicable here. In the previous case, the plaintiffs challenged the conversion of Level I ATC towers, which threatened, and indeed terminated, many of their jobs. *NATCA,* 944 F. Supp. at 1343 (N.D. Ohio 1996). The Court of Appeals placed special emphasis on the fact that the plaintiffs were challenging the privatization of "inherently governmental" activity. *NATCA et al.*, N. 95-3016, 78 F.3d 585 (Table), 1996 WL 102421, at *4 (6th Cir. Mar. 7, 1996). Here, the employment of the plaintiffs is not jeopardized in any way, and this court's prior finding that Level I ATC towers were "commercial," and not "inherently governmental," greatly changes the nature of plaintiffs' remaining claim. While the plaintiffs demonstrated injury, causation, and redressablity in previous claims, they can no longer do so with the second supplemental complaint's sole claim challenging the re-competing of contracts.

Accordingly, this court must reluctantly dismiss plaintiffs' sole remaining claim for lack of standing, thus bringing to an end litigation that has existed in one form or another for the past fifteen years.

**IV.     CONCLUSION**

For the above reasons, the FAA's motion to dismiss for lack of standing [dkt. 167] is granted. This order is final and appealable.

                    /s/*Ann Aldrich*
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated:** December 11, 2009